IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLIAM DAVID EDGAR**,

        Petitioner,

v.                                      Civil Action No. 2:10cv59
                                          (Judge Maxwell)

**JOEL ZIEGLER, Warden,**

        Respondent.

## REPORT AND RECOMMENDATION

### I. Procedural Background

The *pro se* petitioner initiated this case on May 5, 2010, by filing a Writ of Habeas Corpus Pursuant to 20 U.S.C. § 2241. (Doc. 1). Pursuant to 18 U.S.C. §§ 3621(b) and 3624(c), the petitioner challenges the Bureau of Prisons ["BOP"] decision to place him in a Residential Release Center ["RRC"] for 150-180 days instead of the maximum allowable twelve months.

On May 10, 2010, the petitioner paid the required filing fee. (Doc. 7). Accordingly, on May 11, 2010, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted, and directed the respondent to file an answer to the petition. (Doc. 8). The respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment on June 8, 2010. (Doc. 10). Because the petitioner is proceeding *pro se*, the Court issued a Roseboro Notice on June 9, 2010. (Doc. 14). On June 15, 2010, the petitioner filed a response and requested that the Court direct the respondent to give him twelve months in an RRC. The case is before the undersigned for a report and recommendation on the petition and the respondent's motion. (Doc. 16).

1

## II. Factual Background

The petitioner is currently serving a 37 month sentence imposed by the United States District Court for the Western District of Pennsylvania for Conspiracy, Bank Fraud and Wire Fraud in violation of 18 U.S.C. § 371; 18 U.S.C. § 1344; and 18 U.S.C. § 1343, respectively. The petitioner was committed to the custody of the BOP on April 28, 2008. (Doc. 12-2, p. 2). His statutory projected release date, via good conduct time, is January 1, 2011, and his full term release date is May 26, 2011. (Doc. 12-2, p. 3).

## III. Issues Presented

In his petition, the petitioner asserts that the BOP did not act in accordance with the provisions of the Second Chance Act when issuing its recommendation for RRC placement. The petitioner further asserts that the Bureau did not consider the purpose and intent of the Second Chance Act when issuing its recommendation and abused its administrative discretion by not granting him the maximum time allowed by statute in an RRC.

The respondent contends, however, that the petition should be dismissed. In support of this contention, the respond argues that the BOP's determination regarding the duration of the petitioner's residential re-entry center placement is not subject to judicial review; the BOP did not abuse its discretion with regard to its RRC review and referral of the petitioner's case pursuant to the Second Chance Act; and the petition is moot.

## IV. The Second Chance Act

On April 9, 2008, the Second Chance Act of 2007, Pub.L.No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12

months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18 U.S.C. 3621(b) are as follows:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

## V. **Analysis**

In the instant case, the petitioner argues that the BOP's repeated failure to consider the five factors, and in particular how his circumstances and individual characteristics impact his RRC placement, violates 18 U.S.C. § 3621(b). However, a review of the Declaration of Lisa Shahan, the petitioner's case manager, together with the documents attached thereto, clearly establish that the five factors were considered.

In recommending that 150-180 days would be a sufficient amount of time for the petitioner to take full advantage of the transitional services and programs in the RRC to facilitate his transition back into the community, staff specifically noted that: (1) there are RRC facilities available in the petitioner's release area; (2) the petitioner's offense makes him eligible for RRC placement; (3) the petitioner will need to secure a permanent residence and employment; (4) there was no statement in the judgment and commitment order by the sentencing court; and (5) there is no pertinent policy by the sentencing commission. (Doc. 12-5). Moreover, although the Referral Form for RRC Placement is sparse in it recitation of the history and characteristics of the petitioner, it must be read in conjunction with the February 9, 2010, Progress Report and other documents relating to the petitioner which were sent to the Community Corrections Office for consideration when that office makes its recommendation to a particular RRC for placement. More particularly, the Progress Report indicates that the petitioner holds a high school degree, has significant work experience, has completed a number of classes while incarcerated, has good communication skills, and holds a job within FCI Morgantown. Accordingly, the petitioner's case manager views him as an individual who can function well in the community, supported by his family and other social networks and resources. (Doc. 12-1, p. 4). In addition, the petitioner's Visitor Report indicates that he had forty visitors between May 16, 2009 and May 7, 2010.[1] (Doc. 12-5) In his case manager's view, this report illustrates his strong family ties. (Doc. 12-1, p. 4). Based on all this information, the petitioner's Unit Team concluded that five to six months transitional RRC placement would be

---

[1] The petitioner's visitors included his mother, brother, sister, nephew, uncle, cousin, friends, and the mother of his children.

sufficient.[2]

Accordingly, as required by the Second Chance Act, the petitioner's Unit Team made its determination on an individual basis and considered the appropriate factors in recommending that he be placed in an RRC for a period of five to six months. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and his petition should be dismissed.

In concluding that the petition should be dismissed, the undersigned has considered the petitioner's reliance on the holding of Strong v. Schultz, 599 F.Supp.2d 446. However, that reliance is misplaced. In Strong, the court ruled that the duration of the prisoner's pre-release placement had been limited to six months in accordance with a BOP Memorandum dated April 14, 2008, which had impermissibly limited staff discretion to designate a greater amount of placement time under the Second Chance Act. Id. at 563. However, on October 21, 2008, the BOP adopted regulations which removed the objectionable "limiting" criteria that had been included in the April 14, 2008, Memorandum.[3] In the petitioner's case, his referral for RRC placement was made on February 22,

---

[2]As noted by the petitioner's case manager, inmates who need longer RRC placements are those without community ties or resources, with very little education, without work history, and/or without a release residence.

[3]In Strong, the court expressly stated, "[u]nlike the April 14, 2008, Memorandum, the [October 21, 2008, regulation] does not limit the discretion of staff to designate inmates to a [halfway house] for more than six months:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, with the time-frames set forth in this part. 28 C.F.R. § 570.22 (October 21, 2008)."

Strong, 599 F.Supp.2d at 563.

2010, well after the new regulations were adopted, and therefore, his review was not subject to the limiting criteria utilized when Strong's review took place.

The undersigned has also considered the plaintiff's allegation "that the BOP's decision-making process was infected by a financial conflict of interest that corrupted its motives in a way unrelated to any legitimate penological objectives." The petitioner advances this argument in an effort to convince the Court that while, generally, any substantive decision by the BOP with regard to his eligibility for RRC placement, or the length of any such placement, is not subject to review by this Court,[4] review is allowable where "there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority." Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974). In support of his argument that the decision making process with respect to his RRC placement was infected by financial conflict of interest, the petitioner has submitted the statement of Harley G. Lappin, the Director of the BOP, which was made to the United States Sentencing Commission at a regional hearing in the Austin, Texas on November 20, 2009. (Doc. 1-3). In his statement, Mr. Lappin noted the following:

> The Second Chance Act expands the Bureau's authority to place inmates into RRCs by extending the time limit from the 10% (not to exceed six months) to 12 months and authorizing the agency to place inmates with short sentences (12 months or less) directly into RRCs for service of their entire term of imprisonment. Based on the mission of the agency – to confine offenders in institutions that are secure and cost efficient and provide opportunities to prepare for reentry – the Bureau of Prisons rarely uses RRCs for direct court commitments and rarely transfers inmates to

---

[4]In making a determination under § 3624(c), the Director must necessarily consider the five factors enumerated in 18 U.S.C. § 3621(b). However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 389 (E.D. Ky. 1997).

> RRC for prerelease services for more than 7 months. Most inmates with short sentences are appropriately placed in federal prison camps, which are minimum security, much less costly than RRCs and offer a wide variety of inmate programs; and most releasing offenders receive the necessary transitional assistance in three to four months at an RRC. While it is certainly desirable for offenders to remain with their families in the community for extended periods of time, such placements cannot be justified within the agency mission as cost efficient and necessary to address reentry needs.

(Doc. 1-3, p. 10).

Clearly, this statement does not reflect the financial conflict of interest that has prompted courts to review agency decisions or policies. As Director of the BOP, Mr. Lappin has a legitimate right to be concerned with budgetary constraints. However the decision to place an inmate in an RRC for less than the maximum of twelve months provides no financial benefit to the staff members making the referral. Accordingly, the petitioner can show no personal interest, financial or otherwise, that would raise constitutional concerns with his RRC placement.

Finally, the undersigned has considered the petitioner's allegation that the respondent knowingly made improper representations of decisions issued by the United States Supreme Court. However, this allegation is clearly without merit.

First, the petitioner alleges that the respondent cited <u>American Paper Institute, inc. v. American Electrical Power Service Corporation, et al.</u>, 461 U.S. 402 (1983), to support its notion that the BOP has discretion to make the decision it did in the manner it did. However, the petitioner argues the case concludes the opposite and supports his petition because it differentiates a decision from the decision making process, the latter of which is reviewable. In fact, the petitioner's argument is no different than the respondent's interpretation of the case. In citing <u>American Paper Institute</u>, the respondent states that a decision and a decision making process are "separate issues."

7

The respondent continues by affirming that to "decide whether [the agency's] action was arbitrary, capricious or an abuse of discretion, we must determine whether the agency adequately considered the factors...that will best serve the purposes of the statute, and whether the agency committed a clear error of judgment." Id. (internal citations omitted). The respondent is clearly referring to the decision-making process and accurately cites the standard of review for the process.

The petitioner also alleges that the respondent cited Moody v. Daggert, 429 U.S. 78 (1976), without noting that it is "bad law" that has been overturned by three Supreme Court decisions between 1980 and 1987. This claim is factually incorrect. The case has received some negative history, but was never overruled. The cases that have cited Moody and have given it "negative history" are U.S. v. Sackinger, 537 F. Supp. 1245 (W.D.N.Y. May 7, 1982), Hopper v. U.S. Parole Com'n, 702 F. 2d 842 (9th Cir. 1983), U.S. v. Scott, 850 F. 2d 316 (7th Cir. 1988), and U.S. v. Garrett, 253 F. 3d 443 (9th Cir. 2001).

In summary, the petitioner enjoys no guarantee of, or constitutional right to, a twelve-month RRC term of placement. Furthermore, for the reasons noted, the petitioner's Unit Team complied with the Second Chance Act by applying the criteria of 18 U.S.C. § 3621 to the specific facts of his case. Therefore, the petition should be dismissed with prejudice.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 10) be **GRANTED,** and the petitioner's §2241 petition be **DENIED** and **DISMISSED with prejudice**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the

Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: July 8, 2010

                                              /s/ James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE